The BOARD OF REGENTS OF the UNIVERSITY OF MINNESOTA, d/b/a University of Minnesota Hospital and Clinic, Plaintiff,

v.

Donna SHALALA, Secretary of the United States Department of Health and Human Services, Defendant.

Civ. No. 4–91–572.

United States District Court,
D. Minnesota,
Fourth Division.

April 22, 1993.

James M. Gaynor, Jr., Mary T. Zerega, McDermott, Will & Emery, Chicago, IL, Keith A. Dunder, University of Minnesota Hosp. and Clinic, Minneapolis, MN, Albert W. Shay, McDermott, Will & Emery, Washington, DC, for plaintiff.

Francis X. Hermann, Interim U.S. Atty., and Mary J. Atmore, Asst. U.S. Atty., Minneapolis, MN, Mary Carlson, Asst. U.S. Atty., Alvin Jaffe, U.S. Dept. of Health and Human Services, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This matter is before the Court on plaintiff's objections to the December 11, 1992 report and recommendation of the United States Magistrate Judge. The Magistrate Judge recommended that judgment be entered in favor of the defendant. Plaintiff asserts that in making this recommendation, the Magistrate Judge accorded too much deference to the agency's interpretation of its regulations regarding Medicare reimbursement for costs related to graduate medical education (GME); in plaintiff's view, the agency's interpretation is entitled to little or no deference because the agency has taken inconsistent positions regarding GME reimbursement. Specifically, plaintiff asserts that the agency's prior pronouncements suggest that the redistribution and community support principles of 42 C.F.R. § 413.85(c) apply to the academic costs of training medical professionals, but not to the clinical costs of training them.

The Court is not persuaded by this argument. The Court finds that plaintiff has failed to identify a clear conflict between the

position taken by the agency in this action and prior official policy pronouncements. In arguing that the agency has taken inconsistent positions, plaintiff relies upon Medicare Intermediary Letter 78–7 and correspondence of various Health Care Financing Administration (HCFA) officials regarding the allocation of GME costs between hospitals and related medical schools. Plaintiff asserts that because these documents did not mention the applicability of the redistribution and community support principles, the principles do not apply when hospitals seek reimbursement for GME costs incurred by related medical schools. If such principles did apply, plaintiff asserts, they would have been mentioned in the intermediary letter and the correspondence.

▉▉▉ In making this argument, plaintiff attempts to infer conflict from absence. The mere fact that the community support and redistribution principles were not addressed in the earlier agency statements does not establish that they did not apply. In addition, the Court notes that a court may decline to defer to agency interpretations only where the inconsistency exists between final agency decisions; letters from HCFA officials are not final agency decisions, and therefore may not be relied upon to support a heightened standard review for a final agency decision. *Lile v. University of Iowa Hospitals and Clinics,* 886 F.2d 157, 161 n. 4 (8th Cir.1989).

Plaintiff also asserts that the agency's position regarding redistribution and community support principles conflicts with Medicare Provider Reimbursement Manual Part 1 (PRM) § 404.2, which draws a distinction between clinical teaching costs and academic classroom costs, and indicates that redistribution principles apply only to the latter. As defendant points out, however, PRM § 404.2 addresses allowable costs for nursing and paramedical programs, not the GME programs that are at issue in this case. Because plaintiff has failed to identify a clear conflict between the agency's position in this case and the agency's prior official pronouncements, the Court finds it appropriate to defer to the agency's interpretation of its regulations.

Even if the agency had changed its position, that fact alone would not justify de novo review of the agency's decision. The United States Supreme Court has recognized that "[a]n initial agency interpretation is not instantly carved in stone." *Chevron, U.S.A., Inc. v. Natural Resources Defense Counsel,* 467 U.S. 837, 863, 104 S.Ct. 2778, 2792, 81 L.Ed.2d 694 (1984). An agency altering its interpretation of existing policy is subject to procedural limitations; however, plaintiff has not identified any procedural irregularities that would invalidate a change in official agency interpretation of 42 C.F.R. § 413.-85(c).

Accordingly, based on the Court's independent de novo review of the Magistrate Judge's report, findings and recommendation, and the Court finding itself in agreement with the report and recommendation,

▉▉▉ **IT IS ORDERED** that:

1. the objections of the plaintiff to the report and recommendation are overruled;

2. the Court adopts the report and recommendation;

3. plaintiff's motion for summary judgment is denied; and

4. defendant's motion for summary judgment is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

## REPORT AND RECOMMENDATION

NOEL, United States Magistrate Judge.

THIS MATTER came before the undersigned Magistrate Judge on the 21st day of September, 1992 for a hearing on the parties' cross motions for summary judgment. This matter has been referred to the undersigned by Order of the Honorable Harry MacLaughlin dated June 30, 1992 pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c). Plaintiff seeks judicial review pursuant to 42 U.S.C. §§ 1395oo(f)(1) of the final determination of the Secretary of Health and Human Services. For the reasons set forth below, the undersigned recommends that defendant's motion for summary judgment be

granted, and plaintiff's motion for summary judgment be denied.

## I. *PROCEDURAL HISTORY.*

This dispute is between University of Minnesota Hospital and Clinic ("Hospital") and Louis W. Sullivan, M.D., Secretary of the Department of Health and Human Services ("Secretary"), through his fiscal intermediary, Blue Cross and Blue Shield Association/Blue Cross and Blue Shield of Minnesota ("Intermediary"), and arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* ("Medicare Act"). The Hospital brought the present action seeking judicial review of the decision of the Administrator of the Health Care Financing Administration ("HCFA") dated May 29, 1991, modifying Provider Reimbursement Review Board ("PRRB") Decision Number 91–D29 dated March 29, 1991. The Administrator's decision constitutes the final decision of the Secretary regarding the Hospital's claim for Medicare reimbursement of graduate medical education ("GME") and allied health education costs for its fiscal years ("FY") ended June 30, 1981–1983. The parties have brought cross motion for summary judgment. The Hospital argues that the Secretary's decision is inconsistent with the Medicare Act, not supported by substantial evidence, arbitrary and capricious, and an abuse of discretion. The Secretary argues that its decision is supported by substantial evidence and is in accordance with the law. Specifically the Secretary argues that his decision is consistent with 42 C.F.R. § 413.85 which prohibits payment for educational costs which have been redistributed from the educational institution to the patient care institution and/or were previously absorbed by the community.

## II. *FACTUAL BACKGROUND.*

The Medicare Act, part of the Social Security Act, establishes a system of health insurance for the aged and certain disabled people under age 65. *See* 42 U.S.C. §§ 1395 *et seq.* The program is divided into two parts. Part A, known as the "health insurance program" is funded out of social security taxes, and provides benefits for inpatient hospital and related post-hospital expenses. 42 U.S.C. §§ 1395c and 1395d. Part B establishes a voluntary program of "supplementary medical insurance" for beneficiaries who pay a specified monthly premium. It includes payment for covered physician services and other covered medical services. 42 U.S.C. §§ 1395k, 1395*l* and 1395x(s).

Under Part A of the Act, an eligible Medicare beneficiary is entitled to have payment made by the Medicare program on their behalf for inpatient and outpatient hospital services provided by a hospital that has entered into an agreement with the Secretary to participate in the Medicare program. Such a hospital is a "provider" of services under the Medicare Act. 42 U.S.C. § 1395cc(a). Payment to providers under the Medicare program is commonly carried out by fiscal intermediaries, typically insurance companies, pursuant to a contract with the Secretary. 42 U.S.C. § 1395h.

A provider files annually with its fiscal intermediary a cost report, which serves as the basis for the calculation of the provider's Medicare reimbursement. *See* 42 C.F.R. §§ 405–406. Upon receipt of a provider's cost report, the fiscal intermediary analyzes the reported data, undertakes any necessary audits, and informs the provider, through a written Notice of Program Reimbursement, of the amount of Medicare reimbursement to which the provider is entitled. 42 C.F.R. § 405.1803. If the provider is not satisfied with this determination, and the total amount in controversy is at least $10,000, the provider may request a hearing before the PRRB. 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835. Within 60 days after a PRRB decision, the Secretary, on his own motion, may reverse, affirm, or modify that decision. 42 U.S.C. § 1395oo(f)(1). The Secretary has delegated his powers to review the Board's decision to the Administrator of the Health Care Financing Administration ("HCFA"), who in turn re-delegated these powers to the Deputy Administrator of HCFA. Pursuant to the applicable provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.,* the provider may then seek review of the Secretary's final decision in federal district court. 42 U.S.C. § 1395oo(f)(1).

Since October 1, 1983, providers have been reimbursed for the costs associated with the provision of impatient hospital services to Medicare beneficiaries pursuant to a prospective payment system. 42 U.S.C. § 1395ww(d). However, certain categories of costs incurred by providers, including medical education costs, are exempt from prospective reimbursement. 42 U.S.C. § 1395ww(a)(4). For the cost years at issue, a provider's approved medical educational costs were reimbursed on a retrospective, reasonable cost basis. Reasonable costs were defined as the "direct and indirect costs of providers of services" and include "all necessary and proper costs incurred in furnishing services." 42 C.F.R. §§ 413.9(a), (b)(1). Reasonable costs were defined to include a provider's costs associated with approved GME activities, "including" trainee stipends, compensation of teachers, and other direct and indirect costs of the activities determined under the Medicare cost-finding principles in regulation § 413.24. 42 C.F.R. § 413.85 (formerly section 405.421).

The Hospital is a part of the Health Sciences Center of the University of Minnesota, offering a broad range of health services and functions as a core facility for education and research. As a university-owned hospital and clinic, the Hospital is a site for GME and allied health education programs at the University of Minnesota. For the cost reporting periods under appeal, the Hospital was physically contiguous to the University of Minnesota Medical School ("Medical School"), occupying different sections of the same floors in the same building. R. 329.[1]

The Medical School incurs costs associated with the GME and allied health education programs at the Hospital and in connection with the administration of Hospital departments. R. 328–29, 348–50. Since prior to the inception of the Medicare program, the Hospital and the Medical School annually have entered into a number of oral and written contracts, generically known as "academic contracts," "administrative contracts,"

and "resident contracts" in order to provide some recognition of these costs. R. 332, 336, 376. The agreements historically have been an internal mechanism by which budgetary authority is transferred from the Hospital to the Medical School to recognize the many costs incurred by the Medical School in support of the Hospital's GME and allied health education programs ("academic contracts") (R. 331–32), or the provision of administrative services to Hospital departments ("administrative contracts"). R. 376–77. These transfers of budgetary authority are generally referred to as "cross-charges." Pursuant to the very first cost report filed under the Medicare program, the Hospital was reimbursed for this cross-charge amount. R. 348–49. In addition to these cross-charges, the Hospital has reimbursed the Medical School for resident stipends through "resident contracts." Under these contracts, the Hospital paid the Medical School for a designated number of full-time equivalent residents who, through the Hospital's GME programs, provide patient care services in the Hospital. R. 335–36.

The amounts charged under the academic, administrative, and resident contracts did not originate from any scientific cost accounting method, but were the product of negotiations between the Hospital and Medical School. R. 334, 348. With the issuance of Intermediary Letter 78–7 in 1978,[2] the Intermediary advised the Hospital to consider a more accurate cost finding method because the cross-charge arrangements, as related party agreements, would no longer be accepted as a measure of the Hospital's GME and allied health education costs. R. 349–50.

The Hospital began looking at alternative cost finding methods in 1978, in concert with the Intermediary and the HCFA Regional Office. R. 349–51. For fiscal years 1981 and 1982 the University conducted The Health Science Cost Allocation Studies ("CAS"). R. 351–52, 372. Fiscal years 1981 and 1982 were the first years the Hospital claimed in excess of the cross-charge amounts. The

---

1. Citations to the Administrative Record are designated as "R." The administrative record was filed by the Secretary and is part of the Docket of this case.

2. Intermediary Letter 78–7 was published by HCFA in 1978 as a guideline for a teaching hospital to claim costs incurred by a related medical school. R. 1419–20.

1981 and 1982 claims were based upon the CAS. The Intermediary rejected the additional GME and allied health education costs claimed by the Hospital in FY's 1981 and 1982 because of concerns about the adequacy of the documentation used for the cost claims. R. 372–73.

To address the concerns raised by the Intermediary regarding the CAS, in 1984 the Hospital undertook a Medical Education Cost Study that was specifically designed to determine the costs of the Hospital's GME and allied health education programs for FY 1983. R. 372. The Cost Study also had the objective of quantifying the costs of the Medical School in providing faculty administrative services to the Hospital. The Cost Study formed the basis for the Hospital's FY 1983 reimbursement claim. It also was used, through adjustments for inflation, to calculate the amended cost claims for FY's 1981 and 1982.

The Intermediary disallowed the Hospital's GME and allied health education reimbursement claims for FYs 1981, 1982, and 1983 in excess of the cross-charge amounts. The Intermediary determined that only the cross-charge amounts for FYs 1981, 1982, and 1983 could be reimbursed. The Intermediary refused to allow the Hospital Medicare reimbursement for the full direct and indirect costs claimed by the Hospital, asserting that allowance of those costs identified in the Hospital's Medical Education Costs Study ("Cost Study"), which formed the basis of the Hospital's cost claims for the fiscal years at issue, would represent an impermissible redistribution of costs from a related medical school to the Hospital in violation of 42 C.F.R. §§ 413.85. The Intermediary limited the Hospital's reimbursement for its GME and allied health education programs to the amounts set forth in "academic," "resident," and "administrative" contracts between the Hospital and the Medical School. This reduced the Hospital's claimed amount for Medicare reimbursement by approximately $8,870,000. (R. 64–66, 69, 92).

The Hospital appealed the Intermediary's adjustments in its FY 1981–83 cost reports to the PRRB. The PRRB concluded that the actual direct costs incurred by the Medical

School for resident and faculty services, as well as indirect overhead costs incurred by the Medical School in connection with the operation of the Hospital's GME programs, were allowable in lieu of the cross-charges between the Hospital and the Medical School. R. 99–102. The PRRB also found that the Hospital's 1983 Cost Study could be used to determine the resident, faculty member, and indirect Medical School costs, subject to a complete audit by the Intermediary. R. 102. Furthermore, the PRRB found that the Cost Study could be retroactively applied to determine the Hospital's GME reimbursement for FYs 1981 and 1982. R. 103. The PRRB rejected the Intermediary's argument that the Cost Study resulted in a redistribution of costs from the Medical School to the Hospital, stating:

> The Board does not accept the Intermediary's argument that the Provider is shifting costs from the Medical School in violation of the community support and redistribution principle set forth in 42 CFR 405.421(c). [now 413.85(c)]. The record shows that, historically, the Provider has always utilized the services of the faculty members of its related medical school for the supervision and education of the residents in its [GME] programs. Throughout its participation in the Medicare program, the Provider has claimed the costs identified with these educational activities, and there is no evidence that the Intermediary ever disallowed the amounts claimed prior to the year in contention for this appeal. In 1983, the Provider performed an in-depth study of its [GME] programs in order to identify all costs related to these ongoing activities ... The fact that the Provider did not fully identify all of the costs associated with its [GME] programs in prior years does not prohibit the correction of this error in the cost reporting period in contention.

R. 100–101.

On review, the Deputy Administrator reversed the decision of the PRRB with respect to the allowability of the GME costs identified in the Cost Study. R. 9. The Administrator found that the Hospital was not entitled to the direct costs incurred by

the Medical School in excess of the cross-charges and the overhead costs of the Medical School claimed by the Hospital. According to the Administrator, such costs would constitute a redistribution of costs from the Medical School to the Hospital in violation of 42 C.F.R. § 413.85. *Id.* The Deputy Administrator found that the community had assumed responsibility for these costs in the past. R. 9. Additionally, the Administrator concluded that the overhead costs of the Medical School claimed by the Hospital did not meet the definition of allowable GME costs pursuant to 42 C.F.R. § 413.85(g), and that the Medicare related organization principle at 42 C.F.R. § 413.17 does not make non-allowable costs allowable. *Id.* Based on the Administrator's decision regarding the Hospital's claimed GME costs, the Administrator vacated the PRRB's decision regarding the validity of the Cost Study and the retroactive application of the Cost Study to the Hospital's FYs 1981 and 1982. R. 21.

The Hospital brought the present action seeking judicial review of the decision of the Administrator which constitutes the final decision of the Secretary regarding the Hospital's claim for Medicare reimbursement of GME and allied health education costs for its fiscal years ending June 30, 1981–1983.

### III. *STANDARD OF REVIEW.*

Jurisdiction over this action arises under 42 U.S.C. § 1395oo(f)(1), which provides that the case "shall be tried pursuant to the applicable provisions under chapter 7 of Title 5 (The Administrative Procedure Act 'APA')." *See Research Medical Center v. Schweiker*, 684 F.2d 599, 602 (8th Cir.1982); *Medical Center of Independence v. Harris*, 628 F.2d 1113, 1117 (8th Cir.1980). The applicable provision of the APA, 5 U.S.C. § 706, provides that the reviewing court shall decide all relevant questions of law [and] interpret constitutional and statutory provisions and hold unlawful any administrative decision that is:

    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

    (B) contrary to constitutional right, power, privilege or immunity;

    (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

    (D) without observance of procedure required by law;

    (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

    (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706(2). *See also Creighton Omaha Regional Health Care Corp. v. Bowen*, 822 F.2d 785, 789 (8th Cir.1987); *Research Medical Center*, 684 F.2d at 602; and *Medical Center of Independence*, 628 F.2d at 1117.

A decision is arbitrary and capricious when consideration of the relevant factors is missing, or where there has been a clear error of judgment. *Citizens To Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). An agency action is arbitrary and capricious if the agency has "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto, Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983).

Similarly, the substantial evidence standard requires an in-depth review of the facts relied upon by the agency in its decision. At a minimum, a decision is not supported by substantial evidence unless the record contains such relevant evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Airport Shuttle Serv., Inc. v. Interstate Commerce Comm'n*, 676 F.2d 836, 840 (D.C.Cir.1982).

An administrative agency's interpretation of its regulations generally is entitled to considerable deference. *Creighton Omaha Regional Health Care Corp.*, 822 F.2d at 789. Such deference is particularly appropriate in the field of Medicare reimbursement.

*Abbott–Northwestern Hospital Inc. v. Schweiker,* 698 F.2d 336, 340 (8th Cir.1983). The Supreme Court has recognized that, although review under the APA is narrow, it does not mean the agency's decision is shielded "from a thorough, probing, in-depth review." *Citizens to Preserve Overton Park,* 401 U.S. at 415, 91 S.Ct. at 823. *See also Memorial Hosp. v. Heckler,* 760 F.2d 771, 773 (7th Cir.1985).

## IV. DISCUSSION OF LAW.

Consistent with the Medicare Act and its legislative history, the Medicare regulations set forth three fundamental principles relating to the reimbursement of medical education costs:

1. These costs should ultimately be borne by communities;

2. To the extent that costs are not yet borne by the communities, the Medicare program will share in a part of those costs, patient care, and represent approved educational activities engaged in by hospitals and which are customarily or traditionally carried on by hospitals; and

3. Under no circumstance will the Medicare program share in costs which have been redistributed from educational institutions or units to patient care institutions or units.

*St. John's Hickey Memorial Hospital, Inc. v. Califano,* 599 F.2d 803 (7th Cir.1979) *citing* 42 C.F.R. § 413.85; *Board of Trustees v. Sullivan,* 763 F.Supp. 178, 189 (S.D.Miss. 1991).

In determining whether the Secretary's decision in the instant case was based on substantial evidence, the court needs to address two issues:

I. Whether the Secretary correctly determined that the costs claimed were ones that had been traditionally borne by the community; and

II. Whether the Secretary correctly determined that allowance of these costs would violate the redistribution prohibition.

The undersigned finds that the Secretary's decision was based on substantial evidence, and that defendant's motion for summary judgment should be granted.

### A. Costs Traditionally Borne by the Community.

The Secretary found that the costs claimed by the Hospital in excess of the cross-charges were ones that have "historically been borne by the community. Moreover, on its face, a presumption of community support is evident, as the record indicates that the Hospital has never claimed the excess costs it now claims in prior years." R. 14. The Hospital argues that this decision was not based upon the substantial evidence.

██ . The Medicare program cannot subsidize the cost of maintaining educational institutions for which the community bears full responsibility and financial support. 42 C.F.R. § 413.85; *St. John's Hickey,* 599 F.2d at 803; *Board of Trustees v. Sullivan,* 763 F.Supp. at 189. The extent to which the Medicare program is to reimburse educational costs is within the purview of Congress. The legislative history of the Act demonstrates that Congress intended to prohibit community-supported education costs from being shifted to the Medicare program and to prohibit those education costs from being reimbursed twice—through state appropriations and through the Medicare program. *Board of Trustees v. Sullivan,* 763 F.Supp. at 189 *citing* S.Rep. No. 404, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.Code Cong. & Admin.News at 1943, 1977.

The regulation governing reimbursement for costs incurred does not define community support. Two recent federal cases have upheld the Secretary's definition of community support as "tuition, hospital fees, grants, bequests, and state funded support" in *Thomas Jefferson University v. Sullivan,* Civil Action 90–2036, 1992 WL 99618 (E.D.Pa. May 1, 1992), and "state appropriations, along with tuition revenues and grants" in *Board of Trustees v. Sullivan,* 763 F.Supp. at 190.

██ The Secretary in the instant case defined community support as "tuition and fees, federal appropriations, federal grants and contracts, private gifts, grants and contracts, endowment income, investment income and

other income." R. 13–14. This definition was found reasonable and entitled to deference in the *Thomas Jefferson* case. (Slip Op. at 17). The undersigned finds that under the regulation, legislative history and recent case law, this definition of "community support" as set out by the Secretary is reasonable. The next question then becomes whether there is substantial evidence to support the Secretary's conclusion that these costs now claimed by the Hospital have been borne historically by the community.

■ Both parties agree that prior to 1981 the Hospital only claimed the cross-charge amounts as its GME costs. The cross-charge amounts did not represent all faculty salaries, fringe benefits, resident stipend costs, nor all indirect costs of the medical school. The cross-charges represented the amount negotiated between the Hospital and the Medical School as incurred by the Medical School in support of the Hospital's GME and allied health education programs, administrative services to the Hospital, and resident patient care services. R. 331–336, 376–377. To the extent the Hospital never claimed any costs in excess of the cross-charges, despite the fact that these costs were incurred in years prior to 1981, it is reasonable to infer that the community was bearing these costs. *Thomas Jefferson*, (slip. op. at 19). Unlike in *Ohio State University v. Sullivan*, 777 F.Supp. 582, 588 (S.D.Ohio 1991), where the provider incurred an operating loss for the years in question, here there is no evidence that the provider operated at a loss or that the costs at issue were not in fact absorbed by the Medical School from its various funding sources. The Secretary's decision that the costs at issue were borne by the community was based on the substantial evidence.

## B. The Redistribution Prohibition.

The Secretary concluded that both direct costs and overhead costs related to GME and allied health education programs incurred by the Medical School in excess of the cross-charges claimed by the Hospital would constitute a redistribution of costs from the Medical School to the Hospital in violation of 42 C.F.R. § 413.85. R. 9.

■ The redistribution principle of 42 C.F.R. § 413.85(c) states:

> Although the intent of the program is to share in the support of educational activities customarily or traditionally carried on by providers in conjunction with their operations, it is not intended that this program should participate in increased costs resulting from redistribution of costs from educational institutions or units to patient care institutions or units.

The underlying purpose of the redistribution principle is to limit reimbursement to educational costs related to patient care and to deny reimbursement for educational costs unrelated to patient care. *Ohio State Univ. v. Sullivan*, 777 F.Supp. 582 (S.D.Ohio 1991). If the costs of activities customarily and traditionally have been carried on by providers in conjunction with their operations have been absorbed by an educational unit, such costs may not later be redistributed to a patient care unit. *Thomas Jefferson*, slip op. at 22. It is clear that what the regulation prohibits is the "redistribution of costs." *Id.*

■ In *Thomas Jefferson*, the court found that the excess costs claimed by the Hospital in fiscal year 1985 previously were borne by the Medical School. *Id.* Despite the Hospital's assertion that its increased claim represented a refinement of its cost-finding techniques rather than a redistribution of costs, the court agreed with the Secretary's position that this was an impermissible redistribution of costs from an educational institution to a patient care institution. *Thomas Jefferson*, slip op. at 23. The undersigned finds the decision of the *Thomas Jefferson* court persuasive. The Secretary's conclusion that the costs in excess of the cross-charges would be an impermissible redistribution of costs is a valid interpretation of the regulation.

The court rejects the reasoning of *Ohio State v. Sullivan*, *supra*, relied upon by plaintiff to support its argument that reimbursement of the costs at issue here would not constitute impermissible redistribution of costs from the medical school to the provider. In *Ohio State* the Court concluded that paying for costs never before claimed by the

provider would not constitute an impermissible redistribution of costs because the court disagreed with the administrator's interpretation of the regulation at issue. As interpreted by the *Ohio State* Court, so long as the costs were for activities customarily and traditionally carried on by providers, the regulation did not prohibit reimbursement, even if the costs of the activities had not customarily and traditionally been paid by the provider. *Id.* at 586 (interpreting 42 C.F.R. § 413.85(c)). Even if the regulation at issue is subject to the interpretation given it by the *Ohio State* Court, this court must defer to the Secretary's contrary interpretation, because it too is a reasonable interpretation. *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).

Indeed, this court agrees with the Secretary that his reading of the regulation is more reasonable than the plaintiff's or the Court's in *Ohio State*. It is the redistribution of GME costs from the medical school to the provider that the rule prohibits. The interpretation of the *Ohio State* Court would prohibit only reimbursement for new or different activities not customarily or traditionally carried on by the provider or providers generally.[3] The rule is broader than that.

This court also rejects the conclusion of the *Ohio State* Court "if the Medicare program did not pay its fair share of these costs, there is a likelihood that they would be shifted to non-Medicare patients in violation of the Medicare Act. 42 U.S.C. § 1395x(v)(1)(A) . . . ." There is nothing in the record before this court to suggest that the costs in excess of the cross-charges were ever absorbed by non-Medicare patients. Indeed for the reasons set forth above, there is substantial evidence in the record to support the Secretary's conclusion that the excess costs had historically been borne by the community and the medical school through its various funding sources.

---

3. The Court in *Ohio State* did not decide whether the regulation required that to be reimbursable, the activity had to be one that was traditionally and customarily performed by providers in general or by a specific provider, because in that

## V. RECOMMENDATION.

Accordingly, based on the foregoing and on the files, records and proceedings herein, it is RECOMMENDED that:

1. Plaintiff's motion for summary judgment be DENIED; and

2. Defendant's motion for summary judgment be GRANTED.

DATED: December 11, 1992

case, the activities in question (like the activities here) were of the kind generally performed by teaching hospitals in general and by the provider in that case.