BOARD OF REGENTS OF the UNIVER-
SITY OF MINNESOTA, doing business
as the University of Minnesota Hospital
and Clinic, Appellant,

v.

Donna E. SHALALA, Secretary of the
Department of Health and Human
Services, Appellee.

No. 93–2420.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 16, 1994.

Decided May 11, 1995.

Counsel who presented argument on be-
half of the appellant James M. Gaynor, Chi-
cago, IL, argued (Keith Dunder of Minne-
apolis, MN, and Albert W. Shay of Washing-
ton, DC, on the brief), for appellant.

Robert D. Kamenshine, Washington, DC,
argued (Frank W. Hunger, Francis X. Her-
mann and Robert V. Zener, on the brief), for
appellee.

Before McMILLIAN, Circuit Judge, and
BRIGHT and REAVLEY,* Senior Circuit
Judges.

McMILLIAN, Circuit Judge.

The Board of Regents of the University of
Minnesota d/b/a University of Minnesota
Hospital and Clinic (the Hospital) appeals
from a final order entered in the United
States District Court[1] for the District of
Minnesota granting summary judgment in
favor of the Secretary of Health and Human
Services (Secretary) after the Secretary par-
tially disallowed the Hospital's claim for re-
imbursement of approximately $8,870,000 for
graduate medical education (GME) and allied
health education costs, for the fiscal years
ending in 1981, 1982, and 1983 (FY81, FY82,
and FY83), under Title XVIII of the Social
Security Act, 42 U.S.C. § 1395 *et seq.* (the
Medicare Act). *Board of Regents v. Shalala,*
837 F.Supp. 303 (D.Minn.1993) (memoran-
dum and order adopting the report and rec-
ommendation of the magistrate judge[2]); *id.*
(Dec. 11, 1992) (magistrate judge's report
and recommendation). For reversal, the
Hospital argues that the decision of the Sec-

* The Honorable Thomas M. Reavley, Senior Unit-
  ed States Circuit Judge for the Fifth Circuit,
  sitting by designation.

1. The Honorable Harry H. MacLaughlin, United
   States District Judge for the District of Minneso-
   ta.

2. The Honorable Franklin L. Noel, United States
   Magistrate Judge for the District of Minnesota.

retary partially disallowing its claim violates the Administrative Procedure Act (APA), 5 U.S.C. § 706. For the reasons discussed below, we affirm the order of the district court.

## Background

Because the factual and procedural history of this case is well stated in the magistrate judge's report and recommendation, we only briefly summarize it here. The Hospital is part of the University of Minnesota's Health Sciences Center, which offers a broad range of health services and functions as a core facility for medical education and research. The University of Minnesota Medical School (the Medical School) and the Hospital have historically entered into so-called "academic contracts," "administrative contracts," and "resident contracts," which provide for the assignment of spending authority to the Medical School for certain educational and administrative costs at the Hospital. This transfer of budgetary authority is generally referred to as "cross-charging."

Under Part A of the Medicare Act, an eligible Medicare beneficiary is entitled to have payment made on his or her behalf by the Medicare program for qualifying inpatient and outpatient services provided by a hospital that has entered into an agreement with the Secretary to participate in the Medicare program. 42 U.S.C. §§ 1395f, 1395cc(a). This type of patient-care facility is referred to as a "provider" or "provider of services." Id. § 1395x(u). Payment to a provider of such Medicare reimbursements is commonly carried out by a "fiscal intermediary," typically an insurance company, pursuant to a contract with the Secretary. Id. § 1395h. The Secretary has authority to promulgate regulations defining reimbursable costs under 42 U.S.C. § 1395x(v)(1)(A). Under the regulations, a provider may receive reimbursements for certain costs incurred by a medical school which is "related to the provider by common ownership or control." 42 C.F.R. § 413.17(a) (1993). The regulations also specifically address reimbursement for the costs of a provider's "approved educational activities," which may include GME activities. Id. § 413.85–.86. GME programs provide, among other things, specialized clinical training to medical interns and residents. Id. § 413.86. Certain restrictions apply to GME reimbursements, however, including the "community support" and "anti-redistribution" principles embodied in 42 C.F.R. § 413.85(c). Section 413.85(c) provides that the costs of educational activities should generally be borne by the community, and that the Medicare program should not participate in increased costs resulting from the redistribution of costs from educational institutions to patient care institutions.[3] See generally Thomas Jefferson Univ. v. Shalala, —— U.S. ——, ——, 114 S.Ct. 2381, 2384, 129 L.Ed.2d 405 (1994) (Thomas Jefferson).

Prior to FY81, the Hospital had consistently sought reimbursement, pursuant to Part A of the Medicare Act, for the exact amount of the cross-charges. For FY81 and FY82, however, after changing its accounting methods, the Hospital for the first time sought reimbursement for an amount in excess of the cross-charges. The fiscal intermediary, Blue Cross and Blue Shield Association/Blue Cross and Blue Shield of Minnesota (the Intermediary), determined that the Hospital's documentation for its FY81 and FY82

---

**3.** Title 42 C.F.R. § 413.85(c) (1993) provides in full:

> *Educational Activities.* Many providers engage in educational activities including training programs for nurses, medical students, interns and residents, and various paramedical specialities. These programs contribute to the quality of patient care within an institution and are necessary to meet the community's needs for medical and paramedical personnel. It is recognized that the costs of such educational activities should be borne by the community. However, many communities have not assumed responsibility for financing these pro-

> grams and it is necessary that support be provided by those purchasing health care. Until communities undertake to bear these costs, the program will participate appropriately in the support of these activities. Although the intent of the program is to share in the support of educational activities customarily or traditionally carried on by providers in conjunction with their operations, it is not intended that this program should participate in increased costs resulting from redistribution of costs from educational institutions or units to patient care institutions or units.

reimbursement claims was inadequate and thus rejected the claims. For the following year, the Hospital undertook a more comprehensive Medical Education Cost Study (the Cost Study) to justify its FY83 claim for reimbursement for GME and allied health education costs and to amend its claims for FY81 and FY82. Nevertheless, the Intermediary again rejected the Hospital's claims for all costs in excess of the cross-charges for FY81 through FY83, on grounds that such excess costs were nonreimbursable under the anti-redistribution principle set forth in 42 C.F.R. § 413.85(c).

The Hospital appealed the Intermediary's decision to the Provider Reimbursement Review Board (PRRB), an intermediate appellate tribunal within the Department of Health and Human Services. The PRRB reversed the decision of the Intermediary and ruled that the costs reflected in the Cost Study for FY81 through FY83 were reimbursable. The PRRB allowed the Hospital's claims for direct costs incurred by the Medical School for resident and faculty services and in support of faculty teaching, as well as the indirect overhead costs incurred by the Medical School in connection with the Hospital's GME and allied health education programs. The PRRB reasoned that the Hospital's failure to identify all of its costs associated with its GME and allied health programs in the years preceding FY81 did not prohibit reimbursement for such costs incurred in FY81 and subsequent years. *University of Minn. Hosps. & Clinic v. Blue Cross & Blue Shield Ass'n*, Decision No. 91–D29, slip op. at 40 (Provider Reimbursement Review Board Mar. 29, 1991) (cited in *Board of Regents v. Shalala*, slip op. at 9 (Dec. 11, 1992) (magistrate judge's report and recommendation)). In a decision that constituted the final administrative decision of the Secretary, the Deputy Administrator of the Health Care Financing Administration (HCFA) (hereinafter also referred to as "the Secretary") reviewed and reversed the decision of the PRRB, holding that the costs at issue in excess of the cross-charges "represent a redistribution from the [M]edical [S]chool to the [Hospital] in violation of § 413.85." *University of Minn. Hosps. & Clinics v. Blue Cross & Blue Shield Ass'n*, slip op. at 20 (H.C.F.A. May 29, 1991). The Secretary thus denied reimbursement for both the direct costs incurred by the Medical School in excess of the cross-charges and the indirect overhead costs of the Medical School claimed by the Hospital, on grounds that reimbursement of such costs would violate the anti-redistribution principle embodied in 42 C.F.R. § 413.85(c). *Id.* at 19–20.

The Hospital then filed the present action in federal district court seeking judicial review of the Secretary's final decision, pursuant to 42 U.S.C. § 1395oo(f)(1). The matter was referred to the magistrate judge. On cross-motions for summary judgment, the magistrate judge recommended that the Secretary's motion for summary judgment be granted and the Hospital's motion for summary judgment be denied. *Board of Regents v. Shalala*, slip op. at 19 (Dec. 11, 1992) (magistrate judge's report and recommendation). The magistrate judge carefully considered the standard for judicial review of an agency decision under the APA, 5 U.S.C. § 706. Slip op. at 11–12. Upon review of the Secretary's decision, the magistrate judge recommended that the decision be upheld on grounds that (1) the Secretary's decision that the costs at issue were borne by the community was based on substantial evidence, *id.* at 19, and (2) the Secretary's decision that the costs in excess of the cross-charges would be an impermissible redistribution of costs was a valid interpretation of the regulation. *Id.* at 17. Upon de novo review, the district court agreed with the magistrate judge and held that the Secretary's interpretation of 42 C.F.R. § 413.85(c) was reasonable and that the Hospital had failed to demonstrate that the Secretary's interpretation of the pertinent regulations was not entitled to deference. *Id.* (Apr. 22, 1993). The district court therefore adopted the magistrate judge's report and recommendation and granted summary judgment in favor of the Secretary. *Id.* at 4. The Hospital appealed.

## Discussion

On this appeal, we have the benefit of the Supreme Court's decision in *Thomas Jefferson*, which had not been decided at the time

of the administrative and judicial proceedings below. The factual and procedural history of *Thomas Jefferson*, —— U.S. at —— - ——, 114 S.Ct. at 2385–86, is strikingly similar to that of the present case and is briefly summarized as follows. Thomas Jefferson University Hospital (TJUH), a Medicare provider, and Jefferson Medical College (JMC) were related organizations for Medicare purposes. TJUH provided Medicare-approved GME programs, some of which were conducted by JCM faculty. For the years 1974 through 1983, TJUH sought and received` reimbursement for certain categories of salary-related GME costs. TJUH did not, however, seek reimbursement during the same period for other nonsalary-related GME costs, which were borne by JMC. Starting in 1984, TJUH began taking steps to determine whether it was identifying all GME-related costs eligible for Medicare reimbursement. For the year 1984, TJUH submitted a claim for reimbursement of GME-related costs that reflected an increase over the previous years. The fiscal intermediary disallowed the increase. For the following year, TJUH retained an accounting firm to conduct a more in-depth cost study. The cost study reported that TJUH had incurred GME-related costs totaling approximately $8.8 million, including direct and indirect costs not previously claimed by TJUH. The intermediary rejected TJUH's claim, allowing reimbursement only for those salary-related GME costs that had been sought and received in the prior years. The PRRB reversed the intermediary's decision and allowed the full claim. On review of the PRRB's decision, the Secretary, acting through the Administrator of the HCFA, reinstated the fiscal intermediary's decision on grounds that reimbursement of the GME-related costs previously borne by JMC was prohibited by both the anti-redistribution principle and the community support principle set forth in 42 C.F.R. § 413.85(c). TJUH sought judicial review in federal court, challenging the Secretary's construction of 42 C.F.R. § 413.85(c) under the APA. The Secretary's decision was upheld by both the district court and the Third Circuit. *Thomas Jefferson Univ. v. Shalala*, Medicare & Medicaid Guide (CCH) ¶ 40,294, at 30,959 (E.D.Pa.1992), *aff'd*, 993 F.2d 879 (3d Cir. 1993) (without published opinion). The Supreme Court granted certiorari to resolve the conflict created by the Third Circuit's decision and the Sixth Circuit's contrary decision in *Ohio State Univ. v. Secretary*, 996 F.2d 122 (6th Cir.1993).

In stating its decision to uphold the Secretary's interpretation and application of 42 C.F.R. § 413.85(c), the Supreme Court summarized its reasoning in *Thomas Jefferson* as follows:

> Although Medicare reimburses provider hospitals for the costs of certain educational activities, the program is forbidden by regulation from "participat[ing] in *increased costs* resulting from *redistribution of costs* from educational institutions . . . to patient care institutions." 42 C.F.R. § 413.85(c) (1993) (emphasis added). In denying reimbursement for the disputed costs in this case, the Secretary of Health and Human Services interpreted this provision to bar reimbursement of educational costs that were borne in prior years not by the requesting hospital, but by the hospital's affiliated medical school. The dispositive question is whether the Secretary's interpretation is a reasonable construction of the regulatory language. We conclude that it is.

—— U.S. at ——, 114 S.Ct. at 2383.

The Supreme Court began its analysis in *Thomas Jefferson* by noting the applicability of certain general principles of regulatory interpretation. *Id.* at —— - ——, 114 S.Ct. at 2386–87. For example, an agency's interpretation of its own regulations is entitled to substantial deference, which means it must be given controlling weight unless plainly erroneous or inconsistent with the regulation. *Id.* at ——, 114 S.Ct. at 2386 (quoting *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–02, 13 L.Ed.2d 616 (1965) (*Tallman* )). The courts must defer to the Secretary's interpretation unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation. —— U.S. at —— - ——, 114 S.Ct. at 2386–87 (quoting *Gardebring v. Jenkins*, 485 U.S. 415, 430, 108 S.Ct. 1306, 1314,

99 L.Ed.2d 515 (1988)). Moreover, "[t]his broad deference is all the more warranted when, as here, the regulation concerns 'a complex and highly technical regulatory program,' in which the identification and classification of relevant 'criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.'" —— U.S. at ——, 114 S.Ct. at 2387 (quoting *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 697, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604 (1991)).

In light of these principles, the Supreme Court determined that the Secretary's interpretation of the anti-redistribution principle in 42 C.F.R. § 413.85(c) was "neither ' "plainly erroneous [n]or inconsistent with the regulation." ' " —— U.S. at ——, 114 S.Ct. at 2387 (quoting *Tallman*, 380 U.S. at 16–17, 85 S.Ct. at 801). The Supreme Court reasoned that the meaning of the anti-redistribution clause was "straightforward," —— U.S. at ——, 114 S.Ct. at 2387, and that "[t]he Secretary's reading [was] not only a plausible interpretation of the regulation; it [was] the most sensible interpretation the language [would] bear." *Id.* The Court explained:

> [t]he regulation provides, in unambiguous terms, that the "costs" of these educational activities will not be reimbursed when they are the result of a "redistribution," or shift, of costs from an "educational" facility to a "patient care" facility, even if the activities that generated the costs are the sort "customarily or traditionally carried on by providers in conjunction with their operations." § 413.85(c). *The Secretary's reliance on a hospital's own historical cost allocations, along with those of an affiliated medical school, is a simple and effective way of determining whether a prohibited "redistribution of costs" has occurred.* Indeed, one would be hard-pressed to come up with an alternative method to identify the shifting of costs from one entity to another.

*Id.* (emphasis added).

The Supreme Court's analysis and holding in *Thomas Jefferson* are dispositive in the present case. The Hospital's own historical cost allocations indicate that the Hospital is now seeking reimbursement for costs that were previously borne by the Medical School. Thus, those costs represent an impermissible redistribution, or shift, of costs from the Medical School to the Hospital, even if the approved educational activities that generated those costs are of the sort customarily or traditionally conducted by the Hospital in conjunction with its operations. We hold, therefore, that the Secretary's denial of reimbursement for costs in excess of the cross-charges results from a reasonable interpretation of the regulations and is entitled to deference. Because we hold that the application of the anti-redistribution principle in 42 C.F.R. § 413.85(c) suffices to deny reimbursement of the disputed costs in the present case, we need not reach the issues concerning the Secretary's interpretation and application of the community support principle in § 413.85(c). *Accord Thomas Jefferson*, —— U.S. at ——, 114 S.Ct. at 2387 ("because [the anti-redistribution clause's] application suffices to deny reimbursement of the disputed costs in this case, we need not pass upon the Secretary's interpretation of the community support language"). Accordingly, the order of the district court is affirmed.